UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY WRIGHT,

    Plaintiff,

v.

SANDRA CARTER *et al.*,

    Defendants.

Case No. C06-5151RJB

ORDER ADOPTING THE REPORT AND RECOMMENDATION

    This matter comes before the Court on the Report and Recommendation of Magistrate Judge J. Kelley Arnold. Dkt. 32. The Court has considered the relevant records and the remainder of the file herein.

## I. BACKGROUND AND PROCEDURE

    Pro se Plaintiff, Tony Wright, has brought a 42 U.S.C. § 1983 Civil Rights action, claiming illegal racial discrimination. Dkt. 1. Plaintiff applied for, and was granted, *in forma pauperis* status on March 28, 2006. Dkt. 2. On December 20, 2006, Plaintiff filed a Motion for Summary Judgment. Dkt. 27. Defendants, Sandra Carter, Jay Jackson, and Darren Heaward filed a Response on December 29, 2006. Dkt. 28. On January 3, 2007, Defendants filed a Motion to Dismiss for failure to exhaust administrative remedies. Dkt. 29. Plaintiff filed a Reply (Dkt. 31) on January 16, 2007, addressing both Defendants' Response to Plaintiff's Motion for Summary Judgment (Dkt. 28)

ORDER - 1

and Defendants' Motion to Dismiss (Dkt. 29).

On February 6, 2007, Judge Arnold entered a Report and Recommendation (Dkt. 32) addressing both Plaintiff's Motion for Summary Judgment (Dkt. 27) and Defendants' Motion to Dismiss (Dkt. 29). U.S. Magistrate Judge J. Kelley Arnold recommended denying Plaintiff's Motion for Summary Judgment and granting Defendants' Motion to Dismiss. Dkt. 32. On February 16, 2007, Plaintiff filed Objections to Report and Recommendation (Dkt. 33), and on March 2, 2007, Defendants filed a Response to Objections to Report and Recommendation (Dkt. 34).

Plaintiff alleges that he is an inmate who at one time was housed at the Clallam Bay Corrections Center ("CBCC"). *See* Dkt. 30-2, at 2. Plaintiff alleges that, while at CBCC, he was employed as an inmate janitor along with a number of other black inmates. Dkt. 18, at 1. Plaintiff contends that he and two other black inmate janitors were fired in November of 2005 when contraband (a tattoo gun) was found in the janitor supply closet. *Id.* Plaintiff alleges that the firing constituted racial discrimination because a white janitor was using the same closet for storing supplies, another janitor admitted to owning the contraband, only black janitors were fired, and white men were hired to replace the janitors who were fired. Dkt. 1-2, at 3; Dkt. 30, at 4. In their Answer, Defendants admitted that three black janitors were fired, that no white janitors were fired, and that white janitors were hired to replace the black janitors. Dkt. 18, at 1-2. Defendants deny any knowledge of whether another inmate claimed responsibility for the contraband. *Id.*

## II. DISCUSSION

### A.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### 1.   Summary Judgment Standard

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no

ORDER - 2

genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

2.  Analysis of Plaintiff's Summary Judgment Motion

Plaintiff asks for summary judgment as a sanction for defense counsel's failure to return answers and objections to interrogatories within the thirty-day time frame set forth in Fed. Rule Civ. P. 33(b)(3). Dkt. 27, at 1-2. Although counsel for Defendants was late in delivering answers to some of the interrogatories, counsel alerted Plaintiff via letter that the answers were delayed a few days. *Id.* at 2, 4. The delay was modest, and Defendants have now responded and submitted answers and objections to the interrogatories. *Id.* Plaintiff does not allege that the interrogatories were not answered. *Id.*; Dkt. 28, at 5.

The Federal Rules do allow the Court to sanction a party if that party fails to respond to

ORDER - 3

interrogatories. Fed. R. Civ. P. 37(d). These sanctions may include dismissing the action or granting a motion for summary judgment. *Id.* at 37(b). However, the moving party must follow certain procedures before the Court will consider such drastic sanctions. First, the moving party must show that it conferred "in good faith" with the party failing to answer or respond. *Id.* at 37(d). Second, the party must move for an order compelling the non-responding party to answer the interrogatories. *Id.* at 37(a). Only if the other side disregards the Court's order compelling answers would the Court consider sanctions. *Id.* at 37(a)-(d).

Here, Plaintiff has followed none of the necessary procedural steps. Further, while a slight delay in delivering some of the answers to Plaintiff occurred, counsel for Defendants did submit answers and objections to the interrogatories. Dkt. 28, at 5. In a case such as this, sanctions are not appropriate. Therefore, the Court should adopt the Report and Recommendation (Dkt. 32), and Plaintiff's Motion for Summary Judgment (Dkt. 27) should be denied.

### B.   DEFENDANTS' MOTION TO DISMISS

Defendants ask the Court to dismiss the case because Plaintiff has not exhausted all available administrative remedies. The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.*

Under the Prison Litigation Reform Act (PLRA), no action may be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Where exhaustion was once discretionary, it is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 739-40 (2001)). Even when a prisoner seeks relief not available in a grievance proceeding, such as money damages, exhaustion is a prerequisite to suit. *Id.* Administrative law requires proper

ORDER - 4

exhaustion of administrative remedies, which means "using all the steps that the agency holds out," and doing so properly, so that the agency may address the issue on the merits. *Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006).

Under Washington's Offender Grievance Program, an offender may file a grievance for a number of reasons. Dkt 29-2, at 2. The grievance procedure consists of four levels of review, starting at level zero. *Id.* at 3-4. Any offender grievance alleging staff misconduct is automatically classified as a Level II grievance. *Id.* Level II grievances are investigated with the prison superintendent being the respondent. *Id.* Offenders may appeal all Level II responses to Department of Corrections ("DOC") headquarters in Tumwater, Washington, where the claims are reinvestigated. *Id.*

Defendants claim that Plaintiff failed to appeal his Level II response. Dkt. 29. Plaintiff filed a grievance concerning racial discrimination, which was accepted by CBCC as a grievable. Dkt. 29-2, at 4. Plaintiff's grievance was investigated and denied because CBCC concluded that Plaintiff was not fired because of racial discrimination. *Id.* Plaintiff was informed that he could appeal to Level III if he was not satisfied with the Level II response. *Id.* At the bottom of the response form, the guidelines for appeal are set forth: "You may appeal this response by submitting a written appeal to the coordinator within two (2) working days from date this response was received." Dkt. 30-3, at 1. Plaintiff did not submit evidence showing that he appealed the decision.

Plaintiff claims that he did complete all levels of the grievance process, and he submits as support a document signed by Dean Mason, the DOC Grievance Manager from 2002 to 2006, showing that his grievance process was complete. Dkt. 30, at 5; Dkt. 30-3, at 2. The document submitted by Plaintiff contains three boxes that have been circled, and a handwritten note stating "I have asked CBCC to complete your grievance response ASAP." Dkt. 30-3, at 2.

Defendants contend that the document submitted by Plaintiff was falsified, and that the original document contains no checked or circled boxes, only Mason's handwritten note. Dkt. 31-2, at 2-3. Defendants argue that the boxes circled on the document submitted by Plaintiff do not make sense as they are internally inconsistent as well as inconsistent with Mason's handwritten comment.

ORDER - 5

1  *Id.*

2      Plaintiff responds to Defendants' allegations of falsification by stating that he circled the
3  boxes himself because the original shading "did not show on the copy sent to the court and
4  defendants" and so Plaintiff "checked the pertinent boxes." Dkt. 33-1, at 1.

5      Plaintiff admits that he altered documents before submitting them to the Court. Plaintiff's
6  arguments are not persuasive, and the Report and Recommendation sets forth the reasoning why the
7  document as altered by Plaintiff is internally inconsistent. Dkt. 32. This Court agrees and adopts the
8  analysis of the Report and Recommendation (*id.*), rejecting Plaintiff's contention that Mason checked
9  or circled any of the boxes.

10     Plaintiff also argues that Defendants violated his due process and equal protection rights by
11 not responding to his Level II complaint in a timely manner. *Id.* at 2. As such, Plaintiff argues that
12 he did not need to appeal the Level II decision because Defendants did not follow DOC timeliness
13 policies and delayed in responding to his grievance. *Id.*

14     DOC policy normally requires a written response to a grievance within twenty days after the
15 grievance is filed. Dkt. 34, at 2; Dkt 35-2, at 2. DOC policy allows the institution grievance
16 coordinator to grant an additional thirty days to respond to grievances and allows the DOC
17 Grievance Program Manager to grant even longer extensions. Dkt. 35-2, at 2. If the officials
18 anticipate needing an extension, the DOC policy is to advise the offender in writing of the delay.
19 Dkt. 34, at 2.

20     Here, Plaintiff filed his Level II grievance at CBCC on November 22, 2005, and did not
21 receive a reply or a notice of delay until January 26, 2006. *Id.*; Dkt. 29-2, at 9. The record shows
22 that Plaintiff sent a letter to Dean Mason, received on January 25, 2006, complaining that the CBCC
23 administration had not timely responded to his complaint. Dkt. 33-2, at 5-10; Dkt. 31-2, at 1.
24 Mason responded to Plaintiff's letter on January 26, 2006, stating that he had asked CBCC to
25 complete Plaintiff's grievance as soon as possible. *Id.* Plaintiff was provided an official written
26 response on January 26, 2006. Dkt. 30-3, at 1.

27     Despite CBCC's slow response, Plaintiff's arguments are still without merit. Under 42
28 ORDER - 6

U.S.C. § 1997e(a), Plaintiff must exhaust his administrative remedies before this Court can consider the merits of his case. While a delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available, the Plaintiff here has not shown that the appeals process at the prison was rendered "unavailable" by the six week delay. *See Brown v. Valoff*, 422 F.3d 926, 929, 935 (9th Cir. 2005) (holding that while delay may result in an "unavailability" of remedies, the plaintiff in that case did not show that he was prejudiced by the delay and therefore could not show that he had exhausted all available administrative remedies); *Sheets v. Terhune*, 421 F. Supp. 2d 1304, 1306-08 (E.D. Cal. 2006) (discussing circuit law regarding delays in response time); *Williby v. Woodford*, No. CIV S-04-2560, 2007 WL 611240, at *3-*4 (E.D. Cal. Feb. 27, 2007) (finding that a two month delay, resulting in the prisoner's release before the claim was processed, amounted to an "unavailable" remedy). Here, the delay in responding to Plaintiff's grievance was allowed by DOC policy, even though Plaintiff did not receive the required notice that the response would be delayed. Further, when Plaintiff brought the delay to Mason's attention, Plaintiff received a response to the grievance the next day, indicating oversight rather than a deliberate attempt to render the process unavailable. After Plaintiff received a response, he failed to appeal the decision to the final level. Plaintiff has not shown that the delay somehow caused his failure to submit an appeal or somehow otherwise prejudiced him.

Because Plaintiff has not submitted evidence showing that he appealed his grievance to Level III, Plaintiff has failed to exhaust all available administrative remedies. The issues raised by Plaintiff regarding violation of due process, violation of equal protection, and illegal discrimination are not properly before the Court at this time. Therefore, Defendants' Motion to Dismiss (Dkt. 29) should be granted, and the action should be dismissed without prejudice.

ORDER - 7

### **III. ORDER**

Therefore, it is hereby **ORDERED** that

(1) The Report and Recommendation (Dkt. 32) is **ADOPTED**;

(2) This action is **DISMISSED WITHOUT PREJUDICE** for failure exhaust administrative remedies; and

(3) The Clerk is directed to send copies of this Order to Plaintiff, counsel for Defendants, and to the Hon. J. Kelley Arnold.

Dated this 12th day of March, 2007.

Robert J. Bryan
United States District Judge

ORDER - 8